## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.   : | Case No. 25-MJ-21 |
| : | |
| DAMON M. MIDDLETON, : | |
| : | |
| Defendant.  : | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial under 18 U.S.C. § 3142(f)(1)(E) of the federal bail statute.

As discussed further below, the defendant stands charged with Unlawful Possession of a Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). The defendant has twenty prior arrests and six prior convictions. Middleton's criminal history demonstrates that his criminal conduct is increasingly serious and dangerous. The defendant is 32 years old and has had one prior juvenile adjudication.

The bail sheet indicates that the defendant has had two separate Unlawful Possession of a Firearm convictions, one in 2018 and the other in 2012, both in Washington, D.C. In addition, the defendant has a Failure to Identify and giving a False Name conviction from Chambers County, Texas, in May 2017, a Possession of a Spring Assisted Knife conviction in Worcester County, Maryland from October 1, 2015 as well as a Robbery conviction from Montgomery County, Maryland in March 2011.

1

The government requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

## I. Procedural History

The defendant is charged by indictment with Unlawful Possession of Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). At the defendant's initial appearance on March 24, 2025, the government orally moved for detention, and a detention hearing was scheduled for March 26, 2025. The government now moves for detention pending trial pursuant to the above-referenced provisions of the federal bail statute.

## II. Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id.*; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210; *see also Williams*, 798 F. Supp. at 36.

Under Section 3142(g), the Court must analyze four factors in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight

of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure appearance of the defendant in court or the safety of the community were he to be released. *See* 18 U.S.C. § 3142(e)(1).

    A.    <u>**Nature and Circumstances of the Offense**</u>

On January 28, 2025, at approximately 16:11 hours, MPD Officers Jose Moreno and Christopher Mendez were working in the 1800 block of Wiltberger Street, NW, Washington, D.C. The officers were in a marked police cruiser and were in full police uniform. While the officers were on foot patrol, Officer Mendez saw two individuals in a parked white Ford Mustang, with California tag 9EOC249, with their heads slumped over inside the vehicle. One individual occupied the driver's seat and the other was in the front passenger seat.

Officer Mendez saw in plain view the individual in the driver's seat, later identified as Damon Middleton, seemingly inhaling a substance through his nose with a straw. Recognizing that this action is consistent with the use of illegal narcotics, the officers believed that at least one of occupants of the vehicle were ingesting illegal narcotics and both officers approached the vehicle. Officer Mendez approached the driver's side of the vehicle while Officer Moreno approached the passenger side. After they approached the vehicle, Officer Mendez saw a baggie with a white substance consistent with an illegal narcotic on Middleton's lap. The officers ordered both occupants out of the vehicle. The driver of the vehicle, Middleton attempted to try and drive away, but was ordered not to by Officer Mendez, and he complied. The front passenger, later identified as Shareem Hall, physically resisted exiting the vehicle and appeared

to be under the influence of an unknown substance.  Defendant Hall was yelling and screaming and had to be taken down to the ground and pepper sprayed.

Once Hall and Middleton exited the car, the officers searched the vehicle and recovered approximately four grams of a white powdery substance that was packaged in a plastic twist on the driver's side floor, which field tested positive for crack cocaine.  Officers also recovered an electronic scale under the driver's seat.  A black, 9 mm handgun was recovered under the front passenger's seat.  The gun is a Polymer, Model 80, "Ghost Gun", with one round in the chamber.  It was loaded with a Glock 17 magazine that contained 14 rounds in the 17-round capacity magazine. **(Figure 1).**  There are no firearms or ammunition distributors in the District of Columbia, therefore, the firearm and ammunition must have travelled in interstate commerce.  A subsequent record check of the vehicle revealed that the white Ford Mustang was a rental vehicle and had been rented by Middleton.



**Figure 1**

A search incident to arrest of Middleton revealed eight white baggies containing a brown leafy substance weighing 1.5 grams of K2 synthetic cannabinoid in Middleton's left inner pocket jacket which was field tested and displayed a positive color reaction for K2, as well as finding $446.89  in his front left and right pants pocket. **(Figure 2 and 3).**




**Figure 2**                               **Figure 3**

B.  **The Weight of the Evidence**

As mentioned above, the defendant was arrested on January 28, 2025 in a vehicle he rented and was driving with a loaded firearm that was located under the front passenger seat. Court have held drivers to a higher level of accountability of the contents of a vehicle. *United States v. Reynoso,* 33 F. 4th 1083, 1089 (D.C. Cir. 2022). Here, officers observed both Middleton and Hall ingesting controlled substances. Middleton tried to drive away when officers approached, showing consciousness of guilt. Indeed, when he was arrested again on the instant offense on March 21, 2025 on an arrest warrant, he was again in a vehicle with Shareem Hall, and again had drugs on him, this time with packets of heroine and a scale that is consistent with distribution.

It strains credibility that Middleton was unaware of the firearm under the front passenger seat. Middleton rented the vehicle and was clearly aware of the illegal drugs and scales in the car since they were in plain view. Even if Middleton were to argue that Hall brought the loaded firearm into the vehicle and placed it under the front passenger seat, Middleton would have had to have seen it and would have knowledge that the firearm was present in the vehicle.

### C. The Defendant's History and Characteristics

The defendant is currently charged with Possession With Intent to Distribute Heroine in Superior Court when he was arrested on the outstanding arrest warrant in this case on March 21, 2025. The defendant was again in a vehicle with Shareem Hall and again, was in possession of controlled substances. This time, when the defendant was removed from the rear passenger seat of the vehicle, officers observed a gray powdery substance in a clear twist bag inside Middleton's coat pocket. The suspected drugs were field tested and yielded a positive reaction for the presence of opiods. In addition, a scale and $1554 were recovered from the defendant.

The defendant has had numerous firearm convictions. The defendant was found guilty on November 15, 2018 and served 48 months of incarceration for a Unlawful Possession of Firearm conviction in 2017 CF2 01648. In that case, the defendant was the only individual in a vehicle and there was bookbag in the front passenger seat. The police officer lifted the bag and felt something heavy. A subsequent search of the bag revealed a Glock 23 with a high-capacity drum style magazine. In addition, a further search of the vehicle revealed 24 packages of Suboxone (buprenorphine and naloxone 8mg/2mg) Sublingual film. There was no prescription found on Middleton's person. Additionally, $950.00 in a myriad of denominations was recovered from Middleton's person search incident to arrest. Additionally recovered from the trunk of the vehicle were a several apparently fraudulent identification cards from the states of California, Maryland and Nevada.

In April 6, 2012 the defendant was found guilty for another gun charge, for Unlawful Possession of a Firearm in 2011 CF3 13030 where he was sentenced to 24 months of incarceration under the Youth Act. On March 16, 2011, the defendant was convicted of Robbery in Montgomery County, Maryland where he was sentenced to a 3 year suspended sentence.

The defendant's criminal history indicates that he distributes controlled substances and has access to firearms. The defendant's conduct, his criminal history, demonstrate that no condition or combination of conditions would assure the safety of the community. The third factor, the history and characteristics of the person, weighs heavily in favor of detention.

### D. Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs heavily in favor of detention. The charged offense is Unlawful Possession of Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, however, there is evidence of drug trafficking in this case as well. "It is well recognized that drug trafficking presents a danger to the community." *United States v. Bell*, 209 F. Supp. 3d 275, 279 (D.D.C. 2016) (Bates, J.) (citing cases); see also *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021) (recognizing that "threat of dealing drugs" represents a danger to community warranting pretrial detention). In the instant case, the defendant was found in vehicle with drugs, a scale, and a firearm under the front passenger seat of a vehicle that he rented. The defendant was subsequently arrested again two months later, again with drugs, a scale and with the same person Shareem Hall.

There is no doubt, that firearms are dangerous. Indeed, other courts have recognized the inherent dangerousness of carrying a concealed, loaded firearm. *See United States v. Gassaway*, 1:21-cr- 00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d

138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").

The defendant's constructive possession of the firearm and ammunition- and multiple prior felony convictions that prohibits him from possessing any firearm—plainly demonstrates his danger to the community.  This factor, as with all the three prior factors, weighs heavily in favor of pretrial detention.

### III. Conclusion

The defendant has demonstrated that he is unable to comply with court orders based on his prior criminal history. The defendant's criminal history indicates that he is familiar with the criminal justice systems, yet he was arrested in the instant offense with drugs and a firearm in a car he rented.  The defendant was in constructive possession of an illegally loaded firearm with ammunition and has been arrested with illegal firearms on at least two prior occasions.  There is no reason to believe that any condition or combination of conditions of release that would reasonably assure the safety of the community or the defendant's return to court.  The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

    Respectfully submitted,

    EDWARD R. MARTIN, JR.
    UNITED STATES ATTORNEY
    D.C. Bar No. 481866

| | |
|---|---|
| Dated: March 25, 2025 | By: */s/ Shehzad Akhtar* <br> Shehzad Akhtar <br> D.C. Bar No. 493635 <br> Assistant United States Attorney <br> Federal Major Crimes Section <br> 601 D Street NW <br> Washington, D.C. 20530 <br> (202) 252-7498 <br> Shehzad.Akhtar@usdoj.gov |